# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATHER R. OBERDORF, <br> MICHAEL A. OBERDORF, <br><br> Plaintiffs. <br> v. <br><br> AMAZON.COM, INC., <br><br> Defendant. | No. 4:16-CV-01127 <br><br> (Judge Brann) |

## MEMORANDUM OPINION

### DECEMBER 21, 2017

Defendant Amazon.com, Inc., moved for summary judgment against Plaintiffs Heather and Michael Oberdorf. For the reasons that follow, that motion is granted.

## I. BACKGROUND[1]

### A. The Accident

On January 12, 2015, while walking her dog, Heather Oberdorf suffered severe and permanent injuries to her left eye when the retractable leash she was using suddenly malfunctioned, snapping backwards and hitting her violently in the face.[2] Although the accident was tragic, and resulted in permanent loss of vision in

---

[1] The facts in this section are undisputed, and all inferences have been drawn in favor of the Oberdorfs. *See* Standard of Review, *infra* § II.A.

[2] ECF No. 47 Ex. A (Expert Report of Brian O'Donel) at 2.

Ms. Oberdorf's eye, its exact cause and circumstances need not be resolved at this stage. The focus, instead, is on how, and from whom, Ms. Oberdorf acquired the leash.

### B. The Amazon Marketplace

Amazon.com is a well-known online retailer. In addition to selling a variety of goods directly to consumers, it also serves as a vehicle through which third parties may independently offer products for sale.[3] This service, known as the "Amazon Marketplace," is currently utilized by more than one million third-party vendors.[4] These third-party vendors decide which products they wish to sell, obtain their stock from manufacturers or upstream distributors, and set their own sales price.[5] They provide a description (including, perhaps, a photograph) of the product to Amazon, which Amazon uses to create a listing on its website.[6] Consumers browsing or searching for products on Amazon may be directed to these listings, where they are informed that they are purchasing from an identified third party, and not from Amazon itself.[7] Unless the third-party vendor participates in a special "Fulfillment by Amazon" program (which was not the case

---

[3] ECF No. 31 (Affidavit of Nicholas Denissen) ¶ 5.
[4] *Id.* ¶ 7.
[5] *Id.* ¶ 10-11.
[6] *Id.*
[7] *Id.* ¶ 15.

here), Amazon has no interaction with the third-party vendor's product at any time.[8]

Amazon does, however, maintain some control over the Amazon Marketplace sales process. It serves as the conduit through which payment flows, collecting money from purchasers and directing it to third-party vendors after deducting a fee.[9] It requires third-party vendors, as a condition of utilizing the Marketplace, to agree to conduct all communication with consumers through its messaging platform.[10] It retains the right to edit the content and determine the appearance of product listings.[11] And it imposes rules on how third-party vendors should handle shipping and returns.[12]

### C. The Furry Gang

Ms. Oberdorf purchased the retractable leash in question on the Amazon Marketplace on December 2, 2014, from a third-party vendor identified as "The Furry Gang." Following the accident, Plaintiffs have apparently been unable to

---

[8] *Id.* ¶ 10.

[9] ECF No. 41, Ex. 4 at 16. Amazon can also withhold payments to third-party vendors for returns and claim disputes. *Id.* at 15.

[10] *Id.* at 22-23.

[11] *Id.* at 25.

[12] *Id.* at 34-41.

make contact with The Furry Gang or with the manufacturer of the retractable leash.[13]

### D. Procedural History

The Oberdorfs initiated this suit against Amazon on June 13, 2016.[14] Their Complaint describes the accident and contains seven claims. Count I, a strict products liability claim, alleges that Amazon failed to "provide adequate warnings regarding the use of the subject [leash], causing it to be unreasonably dangerous to the intended user at the time it left [Amazon's] possession."[15] Count II, also a strict products liability claim, alleges that the leash was "defectively designed, causing it to be unreasonably dangerous at the time it left the possession of the defendant."[16] There are two claims labelled "Count III": a negligence claim that alleges that Amazon was negligent in "distributing, inspecting, marketing, selling, and testing of the subject dog collar,"[17] and a negligent undertaking claim, based on §§ 323 and 324A of the Restatement (Second) of Torts, that alleges that Amazon breached its duty to the Oberdorfs by, *inter alia*, "[f]ailing to conduct a proper hazard[] analysis and address the hazard of the D-ring failure for the

---

[13] ECF No. 40, Ex. 4 (Affidavit of David Samar).

[14] ECF No. 1.

[15] *Id.* ¶ 24.

[16] *Id.* ¶ 35.

[17] *Id.* ¶ 47.

product."[18] Count IV, a breach of warranty claim, alleges that Amazon breached an implied warranty that the leash was fit for its intended purpose.[19] Count V, a misrepresentation claim, alleges that Amazon misrepresented the quality and fitness of the leash.[20] And Count VI, a loss of consortium claim brought by Mr. Oberdorf, alleges that Amazon's actions proximately caused him "great mental and emotional anguish and loss of life's enjoyment."[21] The Complaint also sought punitive damages.[22]

Amazon moved for summary judgment on June 30, 2017.[23] The Oberdorfs opposed this motion on July 24, 2017,[24] and Amazon replied to this opposition on August 3, 2017.[25]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[18] *Id.* ¶ 54.
[19] *Id.* ¶ 60-61.
[20] *Id.* ¶ 65.
[21] *Id.* ¶ 76.
[22] *Id.* § VI.C.
[23] ECF No. 29.
[24] ECF No. 43.
[25] ECF No. 45.

matter of law."[26] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[27] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[28] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[29]

### B. Whether Amazon is a "Seller" Under Pennsylvania's Strict Products Liability Law

Pennsylvania has adopted § 402A of the Second Restatement of Torts, which states that:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if
>   (a) the seller is engaged in the business of selling such a product, and
>   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
>   (a) the seller has exercised all possible care in the preparation and sale of his product, and

---

[26] Federal Rule of Civil Procedure 56(a).

[27] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

[28] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[29] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.[30]

This provision creates a strict products liability regime, whereby a plaintiff may recover against a defendant if he can prove, *inter alia*, that a product was defectively designed or manufactured, or came with an insufficient warning of its dangers.[31]

Although the Pennsylvania Supreme Court has defined "seller" under § 402A expansively,[32] it has not left that category boundless.[33] In *Musser v. Vilsmeier Auction Co., Inc.*,[34] for example, it held that an auctioneer is *not* a "seller" for purposes of § 402A. There, the Court first noted the policy behind § 402A—*i.e.*, the "special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which

---

[30] *Webb v. Zern*, 422 Pa. 424, 427 (1966).

[31] *Pavlik v. Lane Ltd./Tobacco Exporters Inter.*, 135 F.3d 876, 881 (3d Cir. 1998) ("To recover under §402A, a plaintiff must establish (1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands."); *Phillips v. A-Best Products Co.*, 542 Pa. 124, 131 (1995) ("There are three different types of defective conditions that can give rise to a strict liability claim: design defect, manufacturing defect, and failure-to-warn defect. . . . A product is defective due to a failure-to-warn where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product.")

[32] *See, e.g.*, *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 368 (1977) (extending the coverage of § 402A to "lessors in the business of leasing products to the public").

[33] *See, e.g.*, *Nath v. National Equipment Leasing Corp.*, 497 Pa. 126, 129 (1981) (refusing to extend the coverage of § 402A to "finance lessors engaged in the business of finance leasing").

[34] 522 Pa. 367 (1989).

may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods"[35]—and then indicated that it would not impose strict liability on a defendant unless that policy was furthered.[36]

The Court went on to note that the auction under consideration was a "*means of marketing*," while "[t]he fact of marketing was the act of the seller who chose the products and exposed them for sale by means of that auction."[37] Furthermore:

> The auction company merely provided a market as the agent of the seller. It had no role in the selection of the goods to be sold, in relation to which its momentary control was merely fortuitous and not undertaken specifically. Selection of the products bought was accomplished by the bidders, on their own initiative and without warranties by the auction company. . . . [T]he auctioneer is not equipped to pass upon the quality of the myriad of products he is called upon to auction and with which his contact is impromptu. Nor does he have direct impact upon the manufacture of the products he exposes to bids, such as would result from continuous relationships with their producers and which would be expected to provide him with influence over the latter in acting to make products safer."[38]

The Pennsylvania Supreme Court has not ruled on whether an online sales listing service like Amazon Marketplace qualifies as a "seller" under § 402A; it is

---

[35] *Id.* at 371 (citing Restatement (Second) of Torts § 402A cmt. f.).

[36] *Id.* at 372 ("When those purposes will not be served, persons who se implication in supplying products is tangential to that undertaking will not be subject to strict liability for the harms caused by defects in the products.").

[37] *Id.* at 373.

[38] *Id.*

this Court's job, therefore, to predict how that Court would rule on the question.[39] The prediction, however, seems an uncomplicated one in light of *Musser*. Like an auctioneer, Amazon is merely a third-party vendor's "means of marketing," since third-party vendors—not Amazon—"cho[o]se the products and expose[] them for sale by means of" the Marketplace. Because of the enormous number of third-party vendors (and, presumably, the correspondingly enormous number of goods sold by those vendors) Amazon is similarly "not equipped to pass upon the quality of the myriad of products" available on its Marketplace. And because Amazon has "no role in the selection of the goods to be sold," it also cannot have any "direct impact upon the manufacture of the products" sold by the third-party vendors.

The Amazon Marketplace serves as a sort of newspaper classified ad section, connecting potential consumers with eager sellers in an efficient, modern, streamlined manner. Because subjecting it to strict liability would not further the purposes of § 402A, as revealed by *Musser* and other Pennsylvania cases, it cannot be liable to the Oberdorfs under a strict products liability theory. Therefore, summary judgment will be granted in favor of Amazon on Counts I and II of the Oberdorfs' Complaint.

---

[39] *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (2009) ("In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide th[e] case.").

### C. Whether the Oberdorfs Have Abandoned Their Misrepresentation and Breach of Warranty Claims

In the Motion for Summary Judgment and accompanying brief,[40] Amazon argues that the Oberdorfs' breach of warranty claim (Count IV), misrepresentation claim (Count V), and claim for punitive damages should all fail because of a lack of evidence. The Oberdorfs do not address any of these arguments in their papers in opposition.[41] Therefore, this Court will presume that the Oberdorfs have abandoned those claims,[42] and will grant summary judgment in Amazon's favor on them.

### D. Whether the Communications Decency Act Bars the Oberdorfs' Negligence and Negligent Undertaking Claims

Section 230 of the Communications Decency Act ("CDA")[43] states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content

---

[40] ECF Nos. 29 and 36.

[41] ECF No. 43. The closest the Oberdorfs come to addressing Amazon's arguments on these claims is in a single paragraph of their Response to Amazon's Statement of Undisputed Material Facts, ECF No. 40. There, in response to Amazon's assertion that Ms. Oberdorf "admits she does not recall any misrepresentation made to her by Amazon, or anyone else, regarding the collar," ECF No. 30 ¶ 18, the Oberdorfs simply assert—without offering any factual or legal support or analysis—that "any seller such as Amazon impliedly represents that the products they are putting into the stream of commerce are safe for their intended use," ECF No. 40 ¶ 18.

[42] *Bowser v. Bogdanovic*, 2010 WL 1462548 (M.D. Pa. 2010) ("[W]hen the moving party argues that summary judgment should be granted in its favor regarding a certain claim, the non-movant abandons that claim by failing to address it in his response to the motion for summary judgment.") (citing *Seals v. City of Lancaster*, 553 F.Supp.2d 427 at 432-33 (E.D. Pa. 2008)).

[43] 47 U.S.C. § 230.

provider."[44]  Amazon argues that the Oberdorfs' claims attempt to treat Amazon "as the publisher or speaker" of information provided by The Furry Group—*i.e.*, "as the publisher or speaker" of the product information provided to Amazon by that third-party vendor—and are therefore barred by § 230.

Courts have interpreted § 230 expansively, noting that the immunity provided by that section "does not depend on the form of the asserted cause of action[, but] rather . . . on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another."[45] In *Jane Doe No. 1 v. Backpage.com LLC*, for example, three victims of sex trafficking sued an online classified ad website, alleging that they were trafficked through ads listed on the website by third parties.[46]  The plaintiffs argued that the website was liable for their injuries because it deliberately created a forum to facilitate such ads.[47]  Rejecting this argument, the United States Court of Appeals for the First Circuit determined that the plaintiffs were attempting to hold the website liable "as the publisher or speaker" of third-party content (the sex trafficking ads), and held that the claims were therefore barred by § 230.[48]

---

[44]  47 U.S.C. § 230(c)(1).

[45]  *Jane Doe No. 1 v. Backpage.com LLC*, 817 F.3d 12, 19 (1st Cir. 2016).

[46]  *Id.* at 16-17.

[47]  *Id.*

[48]  *Id.* at 22.

Since the Oberdorfs' claims for strict products liability, misrepresentation, and breach of warranty have all been disposed of *supra*, this Court need only consider Amazon's CDA argument with respect to the Oberdorfs' negligence and negligent undertaking claims.[49] Although the Complaint frames those claims broadly,[50] it is clear from the Oberdorfs' papers that they are, in fact, attempting to hold Amazon liable for its role in publishing an advertisement for The Furry Group's product.[51] In other words, the Oberdorfs are attempting to "treat[ Amazon] as the publisher or speaker of . . . information provided by" The Furry Group. Therefore, these claims are barred by § 230 of the CDA, and summary judgment will be granted in favor of Amazon on both Counts III of the Oberdorfs' Complaint.[52]

---

[49] The loss of consortium claim is discussed *infra*.

[50] The Complaint's first Count III alleges that Amazon was negligent in "distributing, inspecting, marketing, selling, and testing" of the leash. ECF No. 1 ¶ 47. The Complaint's second Count III alleges that Amazon was negligent by, *inter alia*, "providing a product with a dangerous condition . . . [f]ailing to conduct a proper hazard[] analysis . . . fail[ing] to follow the guidelines of the safety hierarchy . . . [and] failing to provide the products with . . . warnings that would have made it safer." *Id.* ¶ 54.

[51] For example, the Oberdorfs argue in their Opposition to Amazon's Motion for Summary Judgment that "Amazon played a direct role in the tortious conduct through its involvement in the actual sale and distribution of the defective product. Specifically, Amazon constructed the solicitation or advertisement that Mrs. Oberdorf saw and based her decision to purchase the collar on[,] . . . collected the funds from Mrs. Oberdorf, retained its fee, and forwarded the remaining funds to the Furry Gang." ECF No. 43 at 16.

[52] Had this Court not already decided that summary judgment should be granted in favor of Amazon on the Oberdorfs' strict products liability claims, it would hold that § 230 of CDA bars those claims as well, since those claims attempt to hold Amazon liable purely because of its role in marketing the leash—*i.e.*, because of its role "as the publisher or speaker" of the product information provided to Amazon by The Furry Gang.

### E. Whether There is a Viable Underlying Claim to Support a Claim of Loss of Consortium

Under Pennsylvania law, "[a]ny action for loss of consortium is derivative, depending for its viability upon the substantive merit of the injured party's claims."[53] Because this Court will enter summary judgment in favor of Amazon on all of the Oberdorfs' other claims, it will correspondingly enter summary judgment in favor on Amazon on the Oberdorfs' loss of consortium claim, Count VI of their Complaint.

### III. CONCLUSION

Although Mrs. Oberdorf's accident and subsequent injury are catastrophic, and have resulted in life-long consequences, this Court has the power only to interpret and apply the law, and not to create new bases for liability. Therefore, for the reasons discussed above, Amazon's Motion for Summary Judgment is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[53] *Schroeder v. Ear, Nose, and Throat Associates of Lehigh Valley, Inc.*, 383 Pa.Super. 440, 444 (1989).